Hearing Date:  November 16, 2012 at 12:00 p.m.
Objection Deadline:  October 23, 2012 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

SALANDER-O'REILLY GALLERIES, LLC,

        Debtor.

Chapter 11
Case No. 07-30005 (CGM)

-----------------------------------------------------------x

SOG LIQUIDATION TRUST,
as successor to THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS OF
SALANDER-O'REILLY GALLERIES, LLC,

        Plaintiff,

    -against-

ANTONETTE FAVUZZA,

        Defendant.

Adv. Pro. 09-09098 (CGM)

-----------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
<u>AGAINST DEFENDANT ANTONETTE FAVUZZA</u>**

Robert J. Feinstein, Esquire
Ilan D. Scharf, Esquire
Beth E. Levine, Esquire
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:    (212) 561-7700
Facsimile:    (212) 561-7777

Counsel for the SOG Liquidation Trust

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ....................................................1

    A.   General Procedural and Factual Background ....................................................... 1

    B.   Favuzza's Relationship to Debtor ......................................................................... 2

    C.   The Preferential Payments .................................................................................... 3

    D.   Nature of the Action .............................................................................................. 4

ARGUMENT ..................................................................................................................................5

    PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS PREFERENCE
    CLAIM AGAINST FAVUZZA ................................................................................... 5

    A.   Summary Judgment Standard ............................................................................... 5

    B.   The Disputed Transfers Were Preferences Pursuant to Section 547 ................... 6

    C.   Defendant Has Not Met Her Burden of Establishing the Ordinary Course Defense .......... 7

    D.   The Transfers Were Not Contemporaneous Exchanges for New Value ............................ 9

CONCLUSION ..............................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Ames Merchandising Corp. v. Revere Mills, Inc. (In re Ames Dep't Stores)*,
  2010 WL 2403104 (Bankr. S.D.N.Y. Jun. 10, 2010) ................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................................. 5

*Balderman v. U.S. Veterans Admin.*,
  870 F.2d 57 (2d Cir. 1989) ........................................................................................................ 5

*Cellmark Inc. v. Ames Merchandising Corp., Inc., (In re Ames)*,
  470 B.R. 280 (S.D.N.Y. 2012) ............................................................................................. 7, 9

*Celotex v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................................. 5

*Child World, Inc. v. Service Merch. Co (In re Child World, Inc.)*,
  173 B.R. 473 (Bankr. S.D.N.Y. 1994) ...................................................................................... 6

*Gold Force v. Official Committee*,
  2004 WL 287144 (E.D.N.Y. Feb. 10, 2004) ............................................................................. 8

*Jones v. Central States, Southeast & Southwest Areas Pension Fund (In re Jones Trucking)*,
  130 F.3d 323 (8th Cir. 1997) .................................................................................................... 9

*Kamen v. Kemper Fin. Servs.*,
  500 U.S. 90, 111 S.Ct. 1711 (1991) .......................................................................................... 5

*Marathon Oil Co. v. Flatau (In re Craig Oil)*,
  785 F.2d 1563 (11th Cir. 1986) ................................................................................................ 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................................................................. 5

*Official Committee v. Martin* (*In re Enron Creditors Recovery Corp.*),
  376 B.R. 442 (Bankr. S.D.N.Y. 2007) ...................................................................................... 7

*Official Plan Comm. v. Expediters Int'l of Washington (In re Gateway Pacific Corp.)*,
  153 F.3d 915 (8th Cir. 1998) .................................................................................................... 9

*Savage & Assoc. v. Mandl (In re Teligent, Inc.)*,
  380 B.R. 324 (Bankr. S.D.N.Y. 2008) ...................................................................................... 8

*Scotto v. Almenas*,
   143 F.3d 105 (2d Cir. 1998) ................................................................................................. 5

**STATUTES**

11 U.S.C. § 547 .......................................................................................................................... 4, 7
11 U.S.C. § 547(b) ......................................................................................................................... 6
11 U.S.C. § 547(c) ......................................................................................................................... 6
11 U.S.C. § 547(c)(2) .................................................................................................................... 7
11 U.S.C. § 547(f) ......................................................................................................................... 7
28 U.S.C. § 157(b)(2)(F) ............................................................................................................... 9

**RULES**

Bankr. S.D.N.Y. R. 7056-1 ........................................................................................................... 4
Fed. R. Bankr. P. 7056 .................................................................................................................. 5
Fed. R. Civ. P. 56 .......................................................................................................................... 5

Plaintiff, the SOG Liquidation Trust (the "Plaintiff" or the "Trust"), successor in interest to the Official Committee of Unsecured Creditors (the "Committee") of Salander-O'Reilly Galleries, LLC (the "Debtor"), the former debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case") under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), submits this memorandum of law in support of its motion (the "Motion") for summary judgment against defendant Antonette Favuzza ("Defendant" or "Favuzza").

## PRELIMINARY STATEMENT

Defendant began her employment as the Debtor's Chief Financial Officer on July 1, 2007. Prior to beginning her job, she agreed with the Debtor's president, Lawrence Salander, that like all of the Debtor's employees, she would be paid every other Friday. Notwithstanding this agreement, Favuzza was not paid her July or August wages until September 4, 2007, less than 90 days prior to the commencement of the above-captioned bankruptcy case.

The undisputed facts in this case establish that the Debtor made $40,093.82 in preferential transfers to Favuzza on September 4, 2007. The undisputed facts also show that these payments were contrary to Favuzza's agreement with the Debtor and outside the ordinary course of business. Finally, the undisputed facts also demonstrate that no other defenses are available to Defendant. Accordingly, Plaintiff is entitled to summary judgment against Favuzza in the amount of $40,093.82 plus costs and prejudgment interest.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

**A.**     **General Procedural and Factual Background**

On November 1, 2007 (the "Commencement Date"), three creditors of the Debtor commenced an involuntary chapter 7 case against the Debtor. Main Case, Docket No. 1.[1] On

---

[1] References to "Main Case, Docket No. ___" are to docket entries in the above-captioned chapter 11 case; references to "Docket No. ___" are to docket entries in the above-referenced adversary proceeding; references to "Favuzza Aff. ¶ _" are to the paragraphs in the *Affidavit of Antonette Favuzza*, sworn to October 14, 2011, and

*(continued)*

November 9, 2007, at the Debtor's request, the Court converted the involuntary chapter 7 case into a voluntary case under chapter 11 of the Bankruptcy Code.  Main Case, Docket No. 25.

Prior to the Commencement Date, the Debtor owned and operated an art gallery located at 22 East 71st Street, New York, New York 10021.  The Debtor was generally engaged in the business of purchasing and selling art, as well as selling art on consignment from other owners.  *Motion for an Order (I) Authorizing Secured and Superpriority Post-Petition Financing Pursuant to 11 U.S.C. § 364, (II) Authorizing Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (III) [sic] Scheduling Hearing on Debtor's Motion For A Final Order Authorizing Financing Pursuant to 11 U.S.C. § 364 Pending Final Hearing* ¶ 6 Main Case, Docket No. 26.

### B.     Favuzza's Relationship to Debtor

Prior to her employment by the Debtor, defendant, Antonette Favuzza ("Favuzza") was employed by Geller and Company ("Geller").  Geller, among other things, is a company that makes available personnel to provide services, including accounting and bookkeeping, on its clients' premises.  Favuzza Aff. ¶ 2.  From February 2007 through June 30, 2007, in her capacity as an employee of Geller, Favuzza worked as the Debtor's accountant.  Favuzza Aff. ¶ 2 and Favuzza Dep. 13:11-14.  Favuzza was employed by the Debtor as its Chief Financial Officer beginning on July 1, 2007.  Favuzza Aff. ¶ 2; Tr. 15:22-24, 16:18-20.  During the course of her employment by Geller and by the Debtor, Favuzza was a certified public accountant.  Favuzza Dep. 9:13-19.

Favuzza negotiated the terms of her employment by the Debtor with Lawrence Salander, its president.  Favuzza Dep. 24:19-21.  Pursuant to her agreement with Lawrence Salander,

---

*(continued)*
annexed to *Antonette Favuzza's Motion for Summary Judgment* [Docket No. 23]; references to "Favuzza Dep." are to the transcript of the deposition of Antonette Favuzza, dated April 12, 2012, and attached as **Exhibit A** to the accompanying *Declaration of Beth E. Levine in Support of Plaintiff's Motion For Summary Judgment* (the "Levine Decl."); and references to "Favuzza Exh __" are to exhibits to the Favuzza Dep., which are attached collectively as **Exhibit B** to the Levine Decl.

Favuzza was to be paid every other Friday, which was the same manner in which the Debtor's other employees were paid. Favuzza Dep. 25:10-24.

**C.    The Preferential Payments**

Although Favuzza had been an employee of the Debtor since July 1, 2007, and, despite her agreement with Mr. Salander that she would be paid every other Friday, she was first paid for her work as an employee of the Debtor by checks dated August 31, 2007. Favuzza Dep. 34:22-35:3. Four of these checks represented Favuzza's July and August wages and were paid on September 4, 2007. Favuzza Aff. ¶ 4, Favuzza Dep. 35:3-5;

Specifically, on September 4, 2007, Favuzza was paid the following checks (collectively the "September Checks"), each of which was dated August 31, 2007:

| Date | Amount Debit | Check Number | Recipient Name |
| --- | --- | --- | --- |
| 9/4/2007 | 9,038.88 | 22899 | Antonette Favuzza |
| 9/4/2007 | 9,038.88 | 22898 | Antonette Favuzza |
| 9/4/2007 | 9,038.88 | 22897 | Antonette Favuzza |
| 9/4/2007 | 9,038.88 | 22896 | Antonette Favuzza |
| 9/4/2007 | 12,980.79 | 22900 | Antonette Favuzza |

Favuzza Aff. ¶ 4; Favuzza Dep. 27:6-29:20; 40:5-24; 42:11-25; 1:3; 49:15-50:2; 50:9-50:22 and Favuzza Exh. 1. In addition to including a payment for payroll, check no. 22900, dated August 31, 2007, and paid September 4, 2007, also contained an expense reimbursement component in the amount of $3,941.82 (the "Expense Reimbursement"). Favuzza Dep. 50:9-25 and Favuzza Exh. 1.[2]

At the time the September Checks were issued, Favuzza was managing the staff responsible for the Debtors' payroll. Favuzza Dep. 30: 3-9.

---

[2] As set forth in the complaint filed in this adversary proceeding, on or about September 17, 2007, Favuzza also received a check received from the Debtor in the amount of $9,038.88, and on or about October 3, 2007, Favuzza received a check from the Debtor in the amount of $9,581.37.

The Debtor was insolvent on September 4, 2007, the date on which the checks were presented for payment at the Debtor's bank. *Debtor's Schedules of Assets and Liabilities*, Main Case, Docket No. 361.

### D.    Nature of the Action

The Committee filed its *Complaint for Avoidance and Recovery of Preferential Transfers* (the "Complaint") on October 30, 2010. [Docket No. 1]. The Complaint alleges that prior to the Commencement Date, Favuzza was a creditor of the Debtor, Complaint ¶ 10, and that the Debtor made transfers to Favuzza in the amount of at least $67,756.56, which transfers were avoidable as preferential transfers pursuant to Bankruptcy Code section 547.

On November 30, 2009, Favuzza filed Antonette Favuzza's *Answer and Affirmative Defenses* (the "Answer") [Docket No. 5] in which she denied the allegations of the Complaint and asserted various affirmative defenses. Plaintiff served discovery requests on Favuzza and conducted her deposition on April 12, 2012, and discovery in this adversary proceeding is now complete. After reviewing the documents produced and conducting Favuzza's deposition, the Trust determined that only the first four September Checks plus the $3,941.82 Expense Reimbursement (in the total amount of $40,093.82) were preferential transfers (collectively, the "Avoidable Transfers").

On June 5, 2012, Defendant filed *Antonette Favuzza's Motion for Summary Judgment* (the "Favuzza Motion") [Docket No. 23] in which she argued (1) that this Court should not determine that she received preferential payments because such payments fell within the ordinary course exception and (2) that this Court must abstain from a ruling on the claims asserted in the Complaint because they arise out of a noncore cause of action.[3]

---

[3] Defendant did not comply with Rule7056-1 of the local rules for the United States Bankruptcy Court for the Southern District of New York because she filed her motion without a pre-motion conference and because the Favuzza Motion does not contain a statement of material facts as to which Defendant contends there is no genuine issue to be tried, let alone the joint statement required by the Revised Scheduling Order entered by this Court in this

*(continued)*

The undisputed facts conclusively demonstrate that each of the Avoidable Transfers was a preferential transfer subject to avoidance by the Trust. Accordingly, this Court should enter judgment in against Favuzza in the amount of $40,093.82, plus costs and prejudgment interest.

## ARGUMENT

### PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ON ITS PREFERENCE CLAIM AGAINST FAVUZZA

A.  **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he Court shall grant summary judgment if the movant shows that there is no dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). On a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. U.S. Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

Once the motion for summary judgment is properly made, the burden shifts to the nonmoving party, to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. The nonmovant "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), but must

---

*(continued)* adversary proceeding [Docket No. 11]. Further, the Favuzza Motion contains neither a hearing date nor a response date. Even assuming, *arguendo*, that the Favuzza Motion was meritorious, it should be disregarded in its entirety because the Defendant failed to follow the local rules. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 100 111 S.Ct. 1711 (1991) (court has 'discretion to deny a party the benefit of favorable legal authorizes when the party fails to comply with reasonable local rules.").

support the existence of an alleged dispute with specific citation to the record materials, Fed. R. Civ. P. 56(c).

Based upon the factual record before this Court, the Court should grant summary judgment to Plaintiff with respect to the Avoidable Transfers.

**B.    The Disputed Transfers Were Preferences Pursuant to Section 547**

Under Bankruptcy Code section 547(b), a debtor is permitted to recover, with certain exceptions, transfers of property that (1) are made to or for the benefit of a creditor, (2) are made on account of an antecedent debt, (3) are made while the debtor was insolvent, (4) are made within 90 (ninety) days of the filing (or within one year of the filing if made to an insider), and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made.  11 U.S.C. § 547(b).  "The debtor must prove each of the elements of the preference algorithm by a preponderance of the evidence.  If the debtor puts forth sufficient proof to establish a prima facie preference, the burden shifts and the creditor is given the opportunity to establish by a preponderance of the evidence that one of the enumerated exceptions in 11 U.S.C. § 547(c) applies."  *Child World, Inc. v. Service Merch. Co (In re Child World, Inc.),* 173 B.R. 473, 476 (Bankr. S.D.N.Y. 1994).

It is beyond dispute that Plaintiff has met its burden with respect to each element of the "preference algorithm:"

- The Avoidable Transfers are transfers that were made to Favuzza. Favuzza Aff. ¶ 4; Favuzza Dep. 27:6-29:20; 40:5-24; 42:11-25; 49:15-50:2; 50:9-50:22 and Favuzza Exh. 1.

- Favuzza is a creditor of the Debtor.  Favuzza Aff. ¶ 7.

- The Avoidable Transfers were made on account of an antecedent debt – back wages that had not been paid.  Favuzza Aff. ¶ 4; Favuzza Dep. 34:22-35:5.

- The Avoidable Transfers were made while the Debtor was insolvent and enabled Defendant to receive more than she would have received if the Debtor's case was under Chapter 7 of the Bankruptcy Code, the Avoidable

> Transfers had not been made, and Favuzza received payment under the provisions of the Bankruptcy Code. *See Debtor's Schedules of Assets and Liabilities*, Main Case, Docket No. 361.[4]

- The Avoidable Transfers were made within 90 days of the Commencement Date. Favuzza Aff. ¶ 4.

Plaintiff has established that the Avoidable Transfers were preferential. They should be recovered from Defendant for fair and equitable distribution to the Debtor's unsecured creditors.

C.     **Defendant Has Not Met Her Burden of Establishing the Ordinary Course Defense**

Defendant's primary defense is that the Avoidable Transfers are protected by the ordinary course of business defense. Section 547(c)(2) governs the ordinary course of business exception. It provides that a transfer under section 547 may not be avoided:

> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of financial affairs of the debtor and the transferee, and such transfer was
>
> > (A) made in the ordinary course of business or financial affairs of the debtor and the transferee, or
> >
> > (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).

The "defense is narrowly construed." *Official Committee v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 458-59 (Bankr. S.D.N.Y. 2007). "In determining whether a transfer is made in the course of ordinary business, a court may consider (i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." *Savage & Assoc. v. Mandl (In re Teligent,*

---

[4] *See also* 11 U.S.C. § 547(f) ("for purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceeding the date of the filing of the petition." ); *Cellmark Inc. v. Ames Merchandising Corp., Inc., (In re Ames)*, 470 B.R. 280, 283 (S.D.N.Y. 2012)  ("Under section 547(f) of the Bankruptcy Code, a debtor is presumed to have been insolvent during the ninety days preceding the filing of the petition . . . This presumption may be rebutted, but the party challenging the avoidability of the transfer bears the burden of proof to introduce some evidence the that the debtor was not in fact insolvent at the time of the transfer." (citations omitted).

*Inc.)*, 380 B.R. 324, 340 (Bankr. S.D.N.Y. 2008). "[A] creditor seeking to benefit from this affirmative defense has the burden of establishing each of [its] elements by a preponderance of the evidence." *Gold Force v. Official Committee*, 2004 WL 287144 at *3 (E.D.N.Y. Feb. 10, 2004).

Favuzza has not met her burden. She was the Debtor's Chief Financial Officer. Favuzza Aff. ¶ 2; Tr. 15:22-24, 16:18-20. Her own testimony makes clear that contrary to her agreement with Mr. Salander and contrary to the manner in the other employees were paid by the Debtor, she was paid for two months of work late and in one fell swoop, rather than every other Friday:

Q:  And with whom did you negotiate that compensation?

A:  With Mr. Salander

*****

Q:  And were you to be paid on a monthly or bimonthly basis or some other basis?

A:  **I was to be paid in the same manner that all the other employees of the gallery were paid.**

Q:  And what was that manner?

A:  I believe it was biweekly.

Q:  Biweekly meaning every two weeks . . .?

A:  Every other Friday.

Q:  That is how others in the gallery were paid as well?

A:  That's correct.

Favuzza Tr. at 24:19-21, 25:10-24 (emphasis added).

Further, "[l]ateness is particularly relevant in determining whether payments should be protected by the ordinary course of business exception. *Marathon Oil Co. v. Flatau (In re Craig Oil)*, 785 F.2d 1563, 1567 (11th Cir. 1986); *Gold Force International, Ltd. v. Official Committee of Unsecured Creditors of Cyberrebate.com, Inc.*, 2004 WL 287144 at *4.

Here the salary payments at issue were anywhere from two weeks to two months late, and there are no facts that support the proposition that the Expense Reimbursement was an ordinary course payment. In view of the indisputable evidence in the nature of Favuzza's **own testimony** as to her agreement with the Debtor that she would be paid every other Friday, like all of the Debtor's other employees, it is beyond question that Favuzza has not and cannot meet her burden of establishing the ordinary course defense. *See Ames Merchandising Corp. v. Revere Mills, Inc. (In re Ames Dep't Stores)*, 2010 WL 2403104 at * 9 (Bankr. S.D.N.Y. Jun. 10, 2010) (ordinary course defense is unavailing where debtor broke with its ordinary business practices). *See Cellmark Paper, Inc. v. Ames Merchandising Corp.*, 470 B.R. at 285 (defense will not apply where "transfers at issue were unique in terms of the manner and timing of payment.").

**D.     The Transfers Were Not Contemporaneous Exchanges for New Value**

In the Answer and in the Favuzza Motion, Favuzza asserted that the Avoidable Transfers were contemporaneous exchanges for new value and as such should be protected by that defense. This defense fails. If, as was the case here, an employer pays past-due salary or benefits, that transfer is **not** for new value. *Jones v. Central States, Southeast & Southwest Areas Pension Fund (In re Jones Trucking)*, 130 F.3d 323, 327 (8th Cir. 1997). Moreover, "[t]he critical inquiry in determining whether there has been a contemporaneous exchange for new value is whether the parties intended such an exchange." *Official Plan Comm. v. Expediters Int'l of Washington (In re Gateway Pacific Corp.)*, 153 F.3d 915, 918 (8th Cir. 1998). Here, because the Debtor paid past due salary to Favuzza, there was plainly no new value. In addition, there is no evidence anywhere in the record that the parties intended a contemporaneous exchange for new value. Accordingly the new value defense fails.[5]

---

[5] In the Favuzza Motion, Defendant argues that this Court should abstain from ruling on the claim asserted in the Complaint because it arises out of a non-core cause of action. This argument is frivolous. Proceedings like this one "to determine, avoid or recover preferences" are specifically denominated as core. 28 U.S.C. § 157(b)(2)(F).

## **CONCLUSION**

As detailed above, the undisputed facts demonstrate that the Avoidable Transfers were preferential and that Favuzza cannot merit her burden of demonstrating any applicable defenses. Accordingly this Court should grant summary judgment against Favuzza in the amount of $40,093.82 and grant such other and further relief as is just and proper.

Dated:  New York, New York
September 30, 2012

      */s/ Beth E. Levine*
Robert J. Feinstein, Esquire
Ilan D. Scharf, Esquire
Beth E. Levine, Esquire
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 36th Floor
New York, New York 10017
Telephone:   (212) 561-7700
Facsimile:    (212) 561-7777

Counsel for the SOG Liquidation Trust