**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                             :       Chapter 11

In re:                                      :

                                             :       Case No. 07-30005 (cgm)

       Salander-O'Reilly Galleries LLC,             :

                             Debtor.          :

------------------------------------------------------------X
SOG LIQUIDATION TRUST,                      :
as successor to the Official Committee         :
of Unsecured Creditors of                          :
Salendar-O'Reilly Galleries, LLC              :       Adv. Pro. No. 09-09098 (cgm)
                   Plaintiff,

-against-

Antonette Favuzza,
                      Defendant.
------------------------------------------------------------X

## MEMORANDUM DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**A P P E A R A N C E S :**

Ilan Scharf
Pachulski Stang Ziehl & Jones LLP
780 Third Avneue
36th Floor
New York, NY 10017
*Attorney for Plaintiff*

Devon Salts
Salts Law Office
2644 East Main Street
Wappingers Falls, NY 12590
*appearing on behalf of*
Roland Gary Jones
Jones & Associates
1230 6th Avenue 7th Floor
New York, NY 10020
*Attorneys for Defendant*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

The parties' cross-motions for summary judgment came before the Court at a hearing held on November 30, 2012. Because the Court finds that the "ordinary course of business" and the "contemporaneous exchange for new value" defenses to preferential transfers do not apply in this case, the Court grants Plaintiff's motion for summary judgment.

## Background

The Official Committee of Unsecured Creditors of Salander-O'Reilly Galleries, LLC (the "Committee") filed this adversary proceeding on October 30, 2009. The Salander O'Reilly Galleries Liquidation Trust is the successor in interest to the Committee.

The complaint was filed against Antonette Favuzza ("Defendant") seeking recovery of an alleged preferential transfer in the amount of $67,756.56, pursuant to sections[1] 547, 550 and 551 of the Bankruptcy Code. Defendant filed an answer to the Complaint on November 30, 2009. On August 12, 2012, the Defendant filed a letter requesting a pre-motion conference seeking permission to file a motion for summary judgment, pursuant to Local Bankruptcy Rule 7056-1(a). A pre-motion conference was scheduled for September 29, 2010. That conference was not held and adjourned to November 30, 2010; and not held and adjourned to December 2, 2010; and not held and adjourned to January 25, 2011; and after that the Pre-Motion Conference appears to have been dropped from the Calendar. But a letter filed on November 7, 2011 indicated that the Pre-Motion conference was adjourned until November 8, 2011.

---

[1] Unless otherwise noted, sectional references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2012).

On November 4, 2011, the Defendant withdrew its motion for summary judgment via letter because the Plaintiff wanted to take the deposition of the Defendant and discovery was not complete.

The status conference on the case was then adjourned 10 more times until June 5, 2012, when the Defendant re-filed its motion for summary judgment. On the record of the September 13, 2012 hearing, the Court granted the Plaintiff's request to file a motion summary judgment. That motion was to be heard on September 25, 2012 and was adjourned until November 19, 2012. Subsequent to the Defendant's motion for summary judgment, the Plaintiff filed its own motion for summary judgment, on September 30, 2012. The opposition was due on October 23, 2012.

The Defendant filed its opposition to Plaintiff's motion on November 16, 2012. Along with its opposition, the Defendant filed a letter to the Court addressing the fact that its motion had been filed and was not responded to by the Plaintiff. Defendant states that its opposition to the summary judgment contains no additional arguments that were not in its summary judgment, and Defendant admits to all of the Plaintiff's undisputed facts. Defendant requests that the Court consider its motion for summary judgment, opposition, and statement of undisputed facts in full.

On November 19, 2012, the Plaintiff responded to the Defendant's letter arguing that the opposition is late and that the briefing schedule, including the October 23, 2012 deadline, was ordered by the Court at the September 13, 2012 hearing. Plaintiff argues that the responses are untimely and should not be considered by the Court.

The Plaintiff has attached the following exhibits to its motion: the Defendant's deposition; copies of the checks in question; a document called "Reconciliation of Complaint,"

which contains the Defendant's W2 and expense reimbursement; and a letter dated July 27, 2007 from Defendant's former employee to the Debtor's president, Lawrence Salander ("Salander").

The Court held a hearing to consider the motions on November 30, 2012.

### **Findings of Facts[2]**

On November 1, 2007, three creditors of Salander-O'Reilly Galleries, LLC commenced an involuntary chapter 7 case against the Debtor. On November 9, 2007, at the Debtor's request, the Court converted the involuntary chapter 7 case into a voluntary case under chapter 11 of the Bankruptcy Code. Prior to the commencement of this case, the Debtor owned and operated an art gallery located at 22 East 71st Street, New York, New York 10021. The Debtor was generally engaged in the business of purchasing and selling art, as well as selling art on consignment from other owners.

Prior to her employment by the Debtor, Defendant was employed by Geller and Company ("Geller"). Geller is a company that makes personnel available to provide services, including accounting and bookkeeping, on its clients' premises. From February 2007 through June 30, 2007, as an employee of Geller, Defendant worked as the Debtor's accountant. Defendant was then employed directly by the Debtor, as its Chief Financial Officer, beginning on July 1, 2007. Defendant negotiated the terms of her employment by the Debtor with Salander. During the course of her employment by Geller and by the Debtor, Defendant was a certified public accountant.

Pursuant to her agreement with Salander, Defendant was to be paid every other Friday which was the same manner in which the Debtor's other employees were paid.

---

[2] Unless otherwise indicated, all findings of fact are from the Plaintiff's Statement of Undisputed Facts and the Defendant's Statement of Undisputed Facts. *See* Plaintiff's Statement of Undisputed Facts, Adv, 09-09098, Docket No. 34; *see also* Defendants Statement of Undisputed Facts, Adv. 09-09098, Docket No. 46. The parties agree that these facts are undisputed. *Id.*

On September 4, 2007, Favuzza was paid the following checks, each of which was dated August 31, 2007.[3]

| Date | Amount | Debit Check Number | Recipient Name |
| --- | --- | --- | --- |
| 9/4/2007 | $9,038.88 | 22899 | Antonette Favuzza |
| 9/4/2007 | $9,038.88 | 22898 | Antonette Favuzza |
| 9/4/2007 | $9,038.88 | 22897 | Antonette Favuzza |
| 9/4/2007 | $9,038.88 | 22896 | Antonette Favuzza |
| 9/4/2007 | $12,980.79 | 22900 | Antonette Favuzza |

Although Favuzza had been an employee of the Debtor since July 1, 2007, she was first paid for her work as an employee of the Debtor by checks dated August 31, 2007. Defendant's July and August wages were paid on September 4, 2007 by checks dated August 31, 2007.

In addition to including a payment for payroll, check no. 22900, also contained an expense reimbursement component. At the time the September checks were issued, Defendant was managing the staff responsible for the Debtors' payroll.

Defendant is a creditor of the Debtor. The Debtor was insolvent on September 4, 2007, the date on which the checks were presented for payment at the Debtor's bank.

## Discussion

In her motion for summary judgment, the Defendant argues that because the alleged preference transfers arose from a contract dispute this is a non-core proceeding beyond the jurisdiction of the Bankruptcy Court.

---

[3] At the November 30, 2012 hearing, the Plaintiff withdrew from his complaint any monies that were currently due to Defendant for wages to be paid on September 4, 2007—as opposed to those that were past due.

Page **5** of **15**

*Jurisdiction and Power under Article III*

Congress has granted district courts with original jurisdiction over bankruptcy cases and civil proceedings arising under title 11, arising in title 11, and related to cases under title 11. 28 U.S.C. § 1334 (2012); *see also In re Arbco Capital Management, LLP*, 479 B.R. 254, 258 (S.D.N.Y. 2012). Pursuant to 28 U.S.C. §157(a), district courts may refer these matters to bankruptcy judges. In the Southern District of New York, the district court has referred all bankruptcy cases to the bankruptcy courts, pursuant to the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska on January 31, 2012.

If a matter is "core," the bankruptcy judge may "hear and determine" the case. 28 U.S.C. § 157(b)(1). Congress has specifically stated that "actions to 'determine, avoid, and recover preferences'" are "core." 28 U.S.C. § 157(b)(2)(F).

The Defendant erroneously relies on *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) and *Claybrook v. Les Schwab Tires Centers of Oregon, Inc.*, 2008 WL 4489771, at *1 (Bankr. D.Del. Sept. 30, 2008), for its argument that this matter is not "core" because the complaint is attempting to prosecute state law causes of action. In *Exide Techs.*, the claims being brought were state law claims, none of which "f[e]ll neatly into the list of core proceedings under 28 U.S.C. § 157(b)(2)." *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008). Similarly, in *Claybrook*, the complaint sought to recover under a theory of breach of contract and only relied on the Bankruptcy Code as an alternative theory of recovery. C*laybrook v. Les Schwab Tires Centers of Oregon, Inc.*, 2008 WL 4489771, at *1 (Bankr. D.Del. Sept. 30, 2008), The court discounted the viability of the avoidance action for that reason. *Id.*

Those cases are markedly different than the case at hand. In this case, the Plaintiff has not alleged any state law causes of action. Rather, it relies solely on 11 U.S.C. §§ 547; 550; and

551 in seeking to avoid, recover, and preserve a preferential transfer.  Congress has specifically designated "proceedings to determine, avoid, or recover preferences" as "core."  28 U.S.C. § 157(b)(2)(F).  Moreover, Congress has stated that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."  28 U.S.C. § 157(3).

Thus, it is obvious that this action constitutes a core proceeding falling within the statutory jurisdiction of the bankruptcy court.  But labeling this action as "core" is no longer the end of the Court's consideration.  *In re Madison Bentley Assoc.*, LLC, 474 B.R. 430, 438 (S.D.N.Y. 2012).  The Court must also consider its authority to enter a final judgment under *Stern v. Marshall*, _ U.S. _, 131 S.Ct. 2594 (2011).

At least one court in this district has held that bankruptcy courts lack final authority to adjudicate preference actions where no proof of claim was been filed by the creditor.  *In re Arbco Capital Management, LLP*, 479 B.R. 254, 264-66; 268 S.D.N.Y. 2012).  However, that case is distinguishable from the case at hand because it interpreted a chapter 7 case.  *See id*. at 257.

In chapter 7, a creditor must file a proof of claim in order to participate in the claims allowance process; "[i]n chapter 11 cases, creditors whose claims are listed need not file a proof of claim unless they are listed as disputed, contingent or unliquidated." *In re Computer Devices, Inc.*, 51 B.R. 471, 476 (Bankr. D. Mass. 1985) (citing 11 U.S.C. § 1111(a)); *see also In re Hooker Invest., Inc.*, 937 F.2d 833, 835 (2d Cir. 1991); *In re Apex Long Term Acute Care--Katy, L.P.*, 465 B.R. 452 (Bankr. S.D. Tex. 2011).  "A creditor whose claim is so designated and who fails to file a proof of claim 'shall not be treated as a creditor with respect to such claim for *the purposes of voting and distribution*.'" *In re Hooker Invest., Inc.*, 937 F.2d 833, 835 (2d Cir.

1991) (quoting Fed. R. Bankr. P. 3003(c)) (emphasis added). Both parties admit that the Defendant is a creditor of the Debtor and she has been listed on the Debtor's schedule E as the holder of an unsecured priority claim in an "unknown" amount.

In *In re Apex Long Term Acute Care--Katy, L.P.*, 465 B.R. 452, 461 (Bankr. S.D. Tex. 2011), the court carefully considered the history of the bankruptcy court's power, the effect of a bankruptcy court's *in rem* jurisdiction over preference actions, and a long line of Supreme Court cases interpreting preference action. *See Apex*, 465 B.R. at 461-63 (discussing *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006)). In pertinent part, the court states that

> [*Central Virginia Community College v. Katz*, 546 U.S. 356 2006)], held that preferential transfer actions are resolved through the exercise of *in rem* jurisdiction and through orders "ancillary to and in furtherance of the court's in rem jurisdiction." 546 U.S. at 378, 126 S.Ct. 990. The *Katz* Court explicitly did not decide "whether actions to recover preferential transfers pursuant to § 550(a) are themselves properly characterized as *in rem*." *Id*. at 372, 126 S.Ct. 990. However, the close connection between preferential transfer actions and the bankruptcy courts' *in rem* jurisdiction was essential to the Court's holding.
>
> > [The] States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have had in proceedings brought pursuant to "Laws on the subject of Bankruptcies." The scope of this consent was limited; the jurisdiction exercised in bankruptcy proceedings was chiefly *in rem*—a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction. But while the principal focus of the bankruptcy proceeding is and was always the res, some exercises of bankruptcy courts' powers—issuance of writs of habeas corpus included—unquestionably involved more than mere adjudication of rights in a res. In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts.
>
> *Katz*, 546 U.S. at 377–78, 126 S.Ct. 990 (citations omitted). The recovery of preferences, under *Katz*'s reasoning, either falls within the bankruptcy courts' in rem jurisdiction or is essential to effectuate the in rem jurisdiction of the bankruptcy courts. Moreover, the "mere declaration of avoidance" under § 547, the *Katz* Court suggests, involves *in rem* jurisdiction. 546 U.S. at 371–72, 126 S.Ct. 990 (noting that "[t]he § 547 determination, standing alone, operates as a

mere declaration of avoidance" and that the trustee may need to recover the transfers under § 550(a), which could "involve *in personam* process" that is ancillary to the court's *in rem* jurisdiction).

*Apex*, 465 B.R. at 467-68 ("The Court concludes that preference actions both stem from the bankruptcy itself and are decided primarily pursuant to *in rem* jurisdiction.").

This Court agrees that it has the power to enter a final order in a preference action. Moreover, the Defendant has consented to the Court's ability to enter a final judgment in this matter by failing to raise *Stern* in her papers. *In re Men's Sportswear, Inc.*, 834 F.2d 1134 (2d Cir. 1987); *In re Bellingham Ins. Agency, Inc.*, 2012 WL 6013836 (9th Cir. Dec. 4, 2012) (failing to raise *Stern* can be construed as consent to bankruptcy court's power to enter final judgments and orders).

The Court makes this determination with the understanding that "[t]he district court may treat any order of the bankruptcy court as proposed findings of fact and conclusions of law in the event the district court concludes that the bankruptcy judge could not have entered a final order or judgment consistent with Article III of the United States Constitution." *In re Standing Order of Reference Re: Title 11*, 12 Misc. 32 (S.D.N.Y. Feb. 1, 2012).

*Summary Judgment*

Summary judgment should be granted, "where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Jacobowitz v. The Cadle Co.*, 309 B.R. 429, 435 (S.D.N.Y. 2004); Fed. R. Civ. P. 56(a). The moving party has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). "[T]he court resolves all ambiguities and draws all permissible factual inferences against the movant." *Jacobowitz*, 309 B.R. at 435.

The nonmoving party should oppose the motion for summary judgment with evidence that is admissible at trial. *See* Fed. R. Civ. P. 56(e)(1); *Crawford v. Dep't of Investigation*, 324 Fed. Appx. 139, No. 07-4793, 2009 LEXIS 10256 (2d Cir. May 13, 2009) (affirming award of summary judgment in favor of the defendant, where a plaintiff presented testimony from uncorroborated source, as well as "speculation, hearsay and other inadmissible rumor, and conclusory allegations"); *Raskin v. The Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) (affirming award of summary judgment in favor of the defendant after finding an expert report inadmissible, noting "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment").

*Preference Actions*

Section 547(b) states:

Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
  (1) to or for the benefit of a creditor;
  (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
  (3) made while the debtor was insolvent;
  (4) made--
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
  (5) that enables such creditor to receive more than such creditor would receive if--
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

It is the trustee's burden to prove by a preponderance of evidence that each element is met. *Child World v. Service Merchandise Co. (In re Child World)*, 173 B.R. 473, 477 (Bankr. S.D.N.Y. 1994). If the trustee establishes a prima facie case, the burden shifts to the creditor,

who must establish by a preponderance of the evidence that one of the exceptions set forth in section 547(c) applies. *Id.*

This section ensures "equality of distribution among creditors of the debtor" and "discourage[s] a race by the creditor to collect payment while the debtor is still marginally solvent, or a race to the courthouse to force the debtor into bankruptcy." *Child World v. Service Merchandise Co. (In re Child World)*, 173 B.R. 473, 476 (Bankr. S.D.N.Y. 1994) (internal quotations omitted).

The Defendant does not dispute that the payments were preferential transfers under 547(b) but instead argues that the transfers meet the exceptions laid out in section 547(c)(1) and (2).

*Applicability of Exceptions*

The Defendant's first argument is that the transfers were made in the ordinary course of business and therefore may not be avoided under section 547(c)(2). In order to meet the "ordinary business exception," the transferee must show that the

> transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; *or*
> (B) made according to ordinary business terms[.]

11 U.S.C. § 547(c)(2) (emphasis added).

The ordinary course of business defense "narrowly construed." *Official Comm. of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 458 (Bankr. S.D.N.Y. 2007) (citations omitted). The purpose of this defense is to leave undisturbed the "normal financial relations" of a debtor. *Id.* at 459.

*Debt Incurred in the Ordinary Course of Business*

Under the first prong of the test, the Court must determine whether the debt itself was one that is normally incurred by the debtor in the ordinary course of business. *Enron*, 376 B.R. at 448 (Bankr. S.D.N.Y. 2007). Here, the debt in question is for the payment of the salary of an employee of the company, and thus is a debt that is normally incurred. This prong does not appear to be in dispute.

*Transfer Incurred in the Ordinary Course or According to Ordinary Terms*

The second prong of the test subjective. The Court must consider whether the *transfer* was made either in the ordinary course of business or according to ordinary business terms.

> In assessing this prong, the court must make a factual inquiry into the prior dealings between the parties. The cornerstone of this element of a preference defense is that the creditor needs demonstrate some consistency with other business transactions between the debtor and the creditor. The creditor must establish a 'baseline of dealings' to enable the court to compare the payment practices during the preference period with the prior course of dealing. The relevant comparisons relate to the amount of the payments, the timeliness of the payments, the existence of any unusual debt collection practices and the form of, and the circumstances surrounding, the payments. The starting point—and often the ending point—involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called "average lateness" computation theory.

*Jacobs v. Gramercy Jewelry Mfg. Corp. (In re M. Fabrikant & Sons, Inc.)*, 2010 Bankr. LEXIS 3941, at *7-*8 (Bankr. S.D.N.Y. Nov. 4, 2010) (internal citations and quotations omitted).

Late payments are presumed to be "nonordinary." *Id*. at 9. This presumption can be rebutted by an established practice or pattern of payments before the preference period to see if these preferences fall within that pattern. *Id*. There is no pattern of late payments between the parties for the Court to consider since the Defendant was not paid by the Debtor prior to July 1, 2007.

Despite the lack of a pattern between the parties, "courts have found that a first time transaction may qualify as an ordinary course of business exception to a preference recovery."

*In re Enron Creditors Recovery Corp.*, 376 B.R. 442, 460 Bankr. S.D.N.Y. 2007 (discussing cases on the subject).  In such circumstances, the parties "ordinary course" of business could be established by the agreement between the parties.  *Id*.  In this instance, the Defendant was not paid pursuant to her oral agreement with the Debtor—to be paid every other Friday, when her checks became due—and thus was paid "outside the ordinary course."  *See In re Ames Dept. Stores, Inc.*, 2010 WL 2403104, at *9 (Bankr. S.D.N.Y. 2010) (holding that the "ordinary course" defense was not available where a corporation breaks with "its ordinary business practices by retaining the checks and deciding who should and should not be paid, rather than mailing the checks as they were printed when payment became due").

As there was no established pattern of late payments and as there was no agreement regarding how to treat late payments, the Court finds the "ordinary course" exception inapplicable.

***Whether Transfers were Made in Contemporaneous Exchange for New Value***

Defendant next argues that the transfers were made in contemporaneous exchange for new value, pursuant to section 547(c)(1).  Section 547(c)(1) states that

> [t]he trustee may not avoid under this section a transfer…
> (1) to the extent that such transfer was--
>  (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
>  (B) in fact a substantially contemporaneous exchange.

Three elements must be met in order for this exception to apply:  "(i) the transfer must be for new value[4] given to the debtor; (ii) the transfer must be intended to be a contemporaneous

---

[4] Under section 547(a)(2): "'new value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]"

exchange; and (iii) the transfer must be in fact a substantially contemporaneous exchange."

*Official Committee of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs., Inc. (In re 360networks Inc.)*, 338 B.R. 194, 204 (Bankr. S.D.N.Y. 2005).

Determining whether "payments [are] for current or past-due employee services" also determines whether the transfer was made in exchange for "new value." *Jones Truck Lines v. Central States, Southeast & Southwest Areas Pension Fund (In re Jones Truck Lines)*, 130 F.3d 323, 327 (8th Cir. 1997). An illustration of this test was provided by the Court of Appeals for the Eighth Circuit in *Jones Truck Lines*:

> To illustrate, assume that an employer fails to pay an employee's salary and benefits when due. The employee complains and threatens to resign, or his union threatens to strike. If the employer responds by paying (or providing collateral for) the past-due salary or benefits, that transfer is not for new value. If the employer also resumes paying the employee's current salary and benefits when due, and the employee keeps working, those current payments are contemporaneous exchanges for "new value," the employee's continuing services.

Payment for antecedent debt is not considered a contemporaneous exchange. *Sapir v. Keener Lumber Co.*, 143 B.R. 347, 352 (Bankr. S.D.N.Y. 1992). Thus, the checks for back pay in this case cannot be considered to fall within this exception because there were not made contemporaneously nor were they made in exchange for the employee's continuing services.

Since the Plaintiff agreed to withdraw from his complaint any payments for current employee services—those that would have been timely paid on September 4, 2007—the Court finds that the remaining checks were for antecedent debt and the "contemporaneous exchange for new value" exception is inapplicable.

**Conclusion**

For the foregoing reasons, the Plaintiff's motion for summary judgment is GRANTED and the Defendant's motion for summary judgment is DENIED. Plaintiff should submit an order consistent with this Memorandum Decision.

Dated: Poughkeepsie, New York
　　　December 13, 2012　　　　　　　/s/ Cecelia G. Morris
　　　　　　　　　　　　　　　　　　CECELIA G. MORRIS
　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES BANKRUPTCY JUDGE